**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THOMAS T.,[1]** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 25 C 12186** |
| **v.** | ) | |
| | ) | **Magistrate Judge** |
| **FRANK BISIGNANO,** | ) | **Daniel P. McLaughlin** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Thomas T.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [18] is denied, and the Commissioner's cross-motion for summary judgment [21] is granted.

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

## BACKGROUND

### I. PROCEDURAL HISTORY

On November 8, 2021 and November 9, 2021, respectively, Plaintiff filed claims for SSI and DIB, alleging disability since February 11, 2017. The claims were denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A telephonic hearing was held on August 7, 2024, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified. Plaintiff amended his alleged onset date to February 12, 2022.

On September 27, 2024, the ALJ denied Plaintiff's claims for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claims were analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of February 12, 2022. At step two, the ALJ concluded that Plaintiff had the following severe

impairments: degenerative disc disease of the cervical spine and thoracic spine. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with the following additional limitations: can reach generally frequently to the left and frequently to the right; can frequently reach overhead to the left and frequently reach overhead to the right; can climb ramps and stairs frequently, climb ladders occasionally, and can never climb ropes or scaffolds; can frequently kneel, crouch, and crawl; can work at unprotected heights occasionally, around moving mechanical parts occasionally, and can operate a motor vehicle occasionally; and can work in extreme cold occasionally, in extreme heat occasionally, and in vibration occasionally. At step four, the ALJ determined that Plaintiff has no past relevant work. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also*

*Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

## III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ's RFC assessment was deficient and she failed to provide logical reasons for rejecting the State agency consultants' opinions; (2) the ALJ failed to properly assess Dr. Neil Patterson's opinions; and (3) the ALJ failed to properly evaluate Plaintiff's symptoms. Each argument will be addressed below in turn.

### A. <u>The ALJ's RFC Assessment and Evaluation of Consultants' Opinions</u>

In advancing his first argument, Plaintiff contends that the ALJ improperly discounted the opinions of the State agency medical consultants. As an initial matter, the Court notes that the ALJ was not required to adopt the consultants' opinions. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[A]n ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians."); *Carrie B. v. Kijakazi*, No. 20-CV-5465, 2022 WL 1228194, at *3 (N.D. Ill. Apr. 26, 2022) ("The Court also rejects the Plaintiff's argument the ALJ erred in not including a limitation to 1-2 step tasks. The ALJ was not required to entirely adopt the findings of the state agency medical consultant."). Rather, the ALJ was required to evaluate the consultants' opinions (and all the medical opinion evidence)

under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

In her decision, the ALJ assessed the medical consultants' opinions as follows:

> The undersigned has considered the opinions provided by the state agency medical consultants, Dr. Jennifer Western and Dr. Richard Bilinsky. The undersigned finds their opinions are not persuasive as they are not well supported and inconsistent with the medical evidence.

> Dr. Western and Dr. Bilinsky cited certain medical records in support of their opinions but did not have the opportunity to review the medical evidence received at the hearing level of review, which showed the claimant's condition improved after his cervical spine surgery in May 2023. In addition, their opinions are not consistent with the medical evidence. While the state agency medical consultants concluded the claimant could not lift or carry more than twenty pounds occasionally, the exams in the record consistently showed no motor strength or range of motion deficits in his upper extremities after his amended alleged onset date. In addition, the state agency medical consultants did not account for the claimant's reduced range of motion in his cervical spine prior to his surgery in May 2023 with any limitations addressing his ability to reach and they did not include any environmental limitations in their opinions to address the claimant's spinal impairments or his medication usage after his amended alleged onset date. Therefore, the undersigned finds the state agency medical consultants' opinions are not persuasive and limited the claimant to medium work with additional reaching and environmental limitations than found by the state agency medical consultants.

(R. 133-134 (citations omitted).)

In sum, the ALJ discounted the consultants' opinions because they were not supported by the complete record, inconsistent with the medical exam findings in the record, and did not account for all of Plaintiff's limitations. Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting the consultants' opinions. *Cf. Ignazio L. v. Bisignano*, No. 25 CV 50503, 2026 WL 2929328, at *4 (N.D. Ill. Sept. 29, 2026) ("The Court finds that the ALJ adequately examined the supportability and consistency of the state agency medical opinions and minimally articulated his reasons for finding the opinions persuasive."). Plaintiff contends that the ALJ impermissibly relied on her own lay assessment and erroneously "played doctor" in discounting the consultants' opinions. The Court rejects that argument. The ALJ reasonably considered and weighed the evidence in relation to the various medical

opinions. *See Armstrong v. Barnhart*, 287 F. Supp. 2d 881, 886-87 (N.D. Ill. 2003) ("Our review of the record indicates that the ALJ was not 'playing doctor,' but performing his duty to consider and weigh the evidence."). Indeed, "comparing and weighing the different [medical] opinions differently based on whether they were supported by the medical record as a whole . . . is exactly what the ALJ is supposed to do." *Roy R. v. Kijakazi*, No. 10 CV 1687, 2022 WL 1185601, at *13 (N.D. Ill. Apr. 21, 2022) (citations omitted). That is what the ALJ did here.

Plaintiff contends that the ALJ did not adequately support her determination that Plaintiff could perform the lifting requirements associated with medium work. In particular, Plaintiff asserts that reversal is required because the ALJ "did not explain why the cited evidence supported the ability to lift 50 pounds." ([18] at 5.) The Court rejects that argument. In assessing Plaintiff's lifting abilities, the ALJ noted that "the exams in the record consistently showed no motor strength or range of motion deficits in [Plaintiff's] upper extremities after his amended alleged onset date." (R. 134.) Though Plaintiff complains that the ALJ did not elaborate further on Plaintiff's ability to lift 50 pounds specifically, to reiterate, an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053-54. Plaintiff also takes issue with the ALJ's consideration of the documented improvement in Plaintiff's symptoms. The Court finds no error there, either. The ALJ considered Plaintiff's improvement throughout her decision and it was appropriate for her to do so. *See Conor B. v. Kijakazi*, No. 20 CV 3342,

2022 WL 4079461, at *10 (N.D. Ill. Sept. 6, 2022) ("So too was it proper for the ALJ to consider the course and effectiveness of Claimant's treatment, as well as Claimant's reported improvement over time with the assistance of medication, work history, and writing of a book.") (citation omitted); *Dante B. v. Kijakazi*, No. 20-CV-1104, 2022 WL 3926050, at *9 (N.D. Ill. Aug. 31, 2022) ("[I]mprovement *is* a relevant factor that ALJs may consider.").

As part of his first argument, Plaintiff contends that the ALJ did not properly evaluate his obesity. Pertinent to that assertion, the ALJ determined that Plaintiff's obesity was nonsevere and she noted that there was no evidence that Plaintiff's "obesity is exacerbating any of his other conditions." (R. 125, 128.) The Court finds that the ALJ's consideration of Plaintiff's obesity was sufficient. A fundamental problem for Plaintiff is that he does not specifically explain, beyond generalizations, how his obesity impacts his other impairments. Rather, Plaintiff asserts that the "consensus within the literature is that obese individuals have reduced maximum muscle strength relative to body mass in their anti-gravity muscles compared to non-obese persons." ([18] at 7.) Such a generalized assertion is unavailing because Plaintiff does not specifically "explain how [his] obesity exacerbated [his] underlying impairments." *Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015); *Tanitria C. v. Saul*, No. 19 CV 1884, 2021 WL 1577795, at *9 (N.D. Ill. Apr. 22, 2021) ("Given that the ALJ expressly considered Claimant's obesity in connection with her other impairments and complaints, Claimant's argument that the ALJ failed to properly account for her obesity lacks merit. Notably, other than general speculations that

morbid obesity can, of course, interact with other impairments to limit physical functions, Claimant has failed to cite to any record evidence showing how her obesity specifically limits her ability to perform work related activities to a greater degree than the ALJ recognized."). Plaintiff claims there is an inconsistency because the ALJ found that his obesity was nonsevere but yet accommodated it in the RFC. However, ALJ's are required to consider both severe and nonsevere impairments in assessing a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1545(a)(2).

Finally, Plaintiff contends that "the ALJ failed to properly assess [his] proposed need for a cane." ([18] at 8.) Pertinent to that argument, the ALJ noted Plaintiff's testimony "that he was unable to walk without an assistive device due to balance issues" but reasoned that "exams in the record showed no balance or neurological abnormalities despite the edema in his lower extremities" and there was "no indication that [Plaintiff's] treatment providers prescribed an assistive device after [Plaintiff's] amended alleged onset date." (R. 135.) Plaintiff protests as an initial matter that "[a] prescription for a cane is not required." ([18] at 8.) That may be true, but it also is not improper for an ALJ to consider the lack of a prescription for an assistive device. *See Rula P. v. Bisignano*, No. 25 C 9526, 2026 WL 1414097, at *4 (N.D. Ill. May 20, 2026) ("[A]n ALJ cannot reject a Plaintiff's use of a cane based solely on the fact that she was not prescribed one. But the lack of a prescription for a cane does not establish that a claimant does not in fact need a cane to ambulate... [a]nd a prescription for a cane from a medical professional does not *require* a finding of medical necessity either.") (citations and internal quotations

omitted). Furthermore, the Court finds that the ALJ otherwise sufficiently explained his rejection of Plaintiff's cane usage as inconsistent with the medical exams in the record. *See Michael M. v. Bisignano*, No. 23 C 02856, 2026 WL 636823, at *4 (N.D. Ill. Mar. 6, 2026) ("[T]he ALJ explained his reasons for finding Plaintiff did not have a medical necessity for a cane. He pointed out that Plaintiff had requested the prescription and that he was only to use it 'as needed.' The ALJ noted no objective medical support for a cane based on repeated clinical documentation of normal gait, coordination, sensation and bilateral lower extremity strength."). This Court may not reweigh the evidence in relation to Plaintiff's alleged need for a cane. *See Keith L. v. Bisignano*, No. 25 C 4025, 2026 WL 821900, at *4 (N.D. Ill. Mar. 25, 2026) ("To the extent Plaintiff is saying the ALJ did not give his cane use enough weight, as noted above, this Court may not substitute its judgment for the ALJ's with respect to weighing the evidence.").

**B. <u>The ALJ's Assessment of Dr. Patterson's Opinions</u>**

For his second argument, Plaintiff contends that the ALJ erred in evaluating the opinions of Dr. Neil Patterson. As set forth above, in assessing Dr. Patterson's opinions, the ALJ was required to explain how she evaluated the factors of supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). In her decision, the ALJ assessed Dr. Patterson's opinions as follows:

> The undersigned has considered the opinion provided by Dr. Neil Patterson. The undersigned finds that Dr. Patterson's opinion is not persuasive as it is not well supported and inconsistent with the medical evidence. Dr. Patterson issued his opinion in a preprinted form and he provided little explanation in support of his conclusions other than to cite the claimant's diagnoses and his reported symptoms. He also issued

> this opinion after just a few visits with the claimant and does not appear to treat the claimant consistently. In addition, Dr. Patterson's opinion is not supported by his own treatment notes. While Dr. Patterson concluded the claimant could not stand, walk or sit for two hours each in an eight-hour day, the exam he completed on the same day he issued his opinion showed no abnormalities other than edema in his legs and reports of pain in his neck. In addition, while Dr. Patterson concluded the claimant could never lift any amount of weight, his exam showed no motor strength deficits or any other neurological abnormalities. Dr. Patterson's opinion is also inconsistent with the other medical evidence. While Dr. Patterson concluded the claimant had to elevate his legs to chest height during the day, the venous doppler ultrasounds in the record showed no deep vein thrombosis in his legs or any other circulatory abnormalities. In addition, other than the edema/discoloration in his lower extremities, his exams consistently showed no abnormalities in the claimant's lower extremities, his motor strength or his range of motion other than his cervical spine after his amended alleged onset date that could be considered consistent with Dr. Patterson's opinions regarding the claimant's functioning. Notably, this edema/discoloration did not prevent the claimant from being cleared for surgery. Nor does Dr. Patterson appear to be a cardiologist. Therefore, the undersigned finds Dr. Patterson's opinion is not persuasive as it is not well supported and inconsistent with the medical evidence.

(R. 133 (citations omitted).)

In sum, the ALJ discounted Dr. Patterson's opinions because they were not supported with explanations, not supported by the doctor's own treatment notes, inconsistent with other medical evidence of record, and were based on limited interactions with Plaintiff. Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting Dr. Patterson's opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The Court must decline Plaintiff's invitation to reweigh the evidence in relation to Dr. Patterson's opinions. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Accordingly, Plaintiff's second argument is unavailing.

### C. The ALJ's Evaluation of Plaintiff's Subjective Symptoms

For his third argument, Plaintiff contends that the ALJ did not properly evaluate his subjective symptoms. Pertinent to that assertion, the ALJ assessed Plaintiff's subjective symptoms as follows in a dedicated passage:

> The undersigned has considered the testimony and written statements provided by the claimant. The undersigned finds that the claimant's statements regarding the severity of his alleged limitations are not consistent with the evidence. While the claimant testified that his cervical impairment and other impairments had left him unable to work since February 12, 2022, the medical record indicates that there were several extended periods after his amended alleged onset date that the claimant did not seek or receive any medical treatment despite his allegedly disabling limitations. Again, there are no barriers to treatment reported in the record. While the claimant alleged disability beginning on February 12, 2022, other than the consultative exam completed in connection with his disability application in August 2022, there is no indication that the claimant sought or received any medical treatment in 2022. In addition, while the claimant did seek treatment for reports of neck pain in 2023, after his surgery in May 2023, there is no indication that he participated in ongoing physical therapy for his spinal impairments and as early as June 1, 2023, the claimant reported ninety-nine per cent improvement in his symptoms on follow up with his surgeon, Dr. Trombly and his PA. While the claimant continued to report some pain and a limited range of motion in his neck in September 2023, his exams from 2024 showed a normal range of motion in his cervical spine with no other neurological abnormalities noted in the latter months of 2023 or in 2024, which indicates that the claimant's spinal condition was not as limiting as he alleged, especially as to his range of motion. In addition, while the claimant testified that he was unable to walk without an assistive device due to balance issues, the exams in the record showed no balance or neurological abnormalities despite the edema in his lower extremities and there is no indication that the claimant's treatment providers prescribed an assistive device after the claimant's amended alleged onset date. The claimant's activities of daily living do not support the severity of his alleged limitations. While the claimant testified that his spinal impairments left him unable to perform any type of work activity, in his function report, he indicated that he was able to care for his personal hygiene, he performed several household chores, he spent time socializing with others and that he was able to travel alone. The undersigned finds that

> the claimant's statements do not support any additional limitations in the claimant's residual functional capacity.

(R. 135-136 (citations omitted).)

This Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). Per the passage quoted above, the ALJ determined that Plaintiff's allegations were not fully corroborated based on Plaintiff's lack of treatment (a topic explored by the ALJ at the hearing), reported improvement, medical exams, and activities of daily living. Under the circumstances, the Court finds that the ALJ sufficiently supported her credibility determination. *See Prill v. Kijakazi*, No. 21-1381, 2022 U.S. App. LEXIS 1072, at *23 (7th Cir. Jan. 13, 2022) ("Substantial evidence supports the ALJ's determination that Prill's account of her subjective symptoms was not consistent with her medical records."); *Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion

that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms."). Plaintiff contends that the ALJ did not adequately address his daily activities in relation to his reported symptoms. The Court rejects that argument. The ALJ did not improperly equate Plaintiff's daily activities with an ability to work full time. Rather, the ALJ appropriately read into Plaintiff's relatively active lifestyle that his asserted impairments were not as severe as alleged. *See Darryl S. v. Kijakazi*, No. 22 C 3827, 2023 WL 3169617, at *4 (N.D. Ill. Apr. 28, 2023). Ultimately, Plaintiff has not shown that the ALJ's evaluation of his subjective symptoms was "patently wrong," as was Plaintiff's burden. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018).

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse the Commissioner's decision [18] is denied, and the Commissioner's cross-motion for summary judgment [21] is granted.

**SO ORDERED.**

**ENTERED:**

**DATE: October 29, 2026**

**HON. DANIEL P. McLAUGHLIN**
**United States Magistrate Judge**